Mr. Justice Robb
delivered the opinion of the Court:
This is an appeal from concurrent decisions of the three tribunals of the Patent Office, awarding priority of invention to Reuben H. Chase, an applicant for reissue, as against Clarence R. Frost, the patentee and other party to the interference.
Frost filed his application May 15th, 1906, and a patent was granted him April 2d, 1907. Chase filed his original application December 14th, 1904, receiving a patent thereon September 4th, 1906. On July 22d, 1908, he filed an application for reissue, copying the claims of the Frost patent, as follows:
“1. In apparatus of the class described, a holder for a supply of elastic tape, a device for rendering the tape adhesive, a stationary guide for the tape, set between the supply and said device, holding the tape normally out of contact therewith.
“2. In apparatus of the class described, a holder for a supply of tape, and a moistening device for one surface- of the tape, in combination with a layer of elastic adhesive material dried upon said surface of the tape, whereby the tape is rendered ■elastic, and a nonyielding guide leading the tape to a position adjacent to, but not in contact with, the moistened device, whereby the unmoistened portion of the tape automatically retracts from said device after contact therewith.”
The description of the invention found in the decision of the Commissioner is so clear and concise that we reproduce it: “The invention in issue relates to a package sealing device in which a strip of gummed paper is fed from a reel over a moistening device in proximity to a cutter, the purpose being to provide for drawing out, moistening, and cutting off a suitable length of the tape for binding a package, the particular invention set forth in the issue being directed to means for main- *181 taming the free end of the tape out of contact with the moistener after the amount of tape desired for use has been cut off. In the prior art, as shown in the patent to Piper, No. 700,816, May 27, 1902, this had been done by means of a pivoted guide which yielded to the tension of the tape as it was being drawn over the moistening rolls, but which was retracted as soon as the tape was released, the tape being thereby raised out of contact with the moistening roll. In the Frost device the yielding member is dispensed with. The tape is passed around a pair of bars or rollers which tend to bend it abruptly when the tape is drawn tight, but which so hold it that when released, the resilience of the stiffened tape causes it to assume a curve of sufficient radius to remove it from contact with the moistener.”
The date of conception alleged by Frost in his preliminary statement was found to be subsequent to the date upon which Chase’s original application was filed. Frost was therefore called upon to show cause why judgment upon the record should not be entered against him. He thereupon filed a motion for the dissolution of the interference, the main grounds of his motion being that Chase had no right to make the claims, that he had shown no sufficient excuse for the reissue or the delay in applying for it, and that intervening rights had accrued. The Primary Examiner, to whom the matter was referred for consideration, sustained the motion, saying: “Briefly, to sum up,. Chase has shown no sufficient excuse for either the reissue or the delay in applying for it; he has not shown that he ever conceived the functions now claimed, and his invention is different from that originally presented.” A motion foi’ rehearing was denied by the Examiner, whereupon an appeal was. taken to the Examiners-in-Chief, who, after hearing, reversed the Examiner’s decision. An unsuccessful effort was then made-to induce the Commissioner, in the exercise of his supervisory-authority, to entertain an appeal. The ease in due course went; to the Examiner of Interferences, and, as no testimony had. been taken, he, of course, adopted the opinion of the Board of' Examiners-in-Chief, and awarded priority to Chase, whereupon an appeal was again taken to that tribunal, who, after a. *182 second hearing, awarded priority of invention to Chase. Upon appeal to the Commissioner, the decision was affirmed and the case was then brought here.
It is apparent from the description of this invention that it is an extremely narrow one. This fact is material in determining the question whether Chase is entitled, in the light of his original specification and drawings, to make the claims of the issue. We will first turn to Frost’s application. It will be noticed that in his claims he refers to an elastic tape. This term is somewhat misleading, for in his specification he describes this tape as “strips of gummed paper or very adhesive fabric.” What is meant, therefore, is that the gum on the paper, or, to use the language of the 2d claim, the “adhesive material dried upon said surface of the tape,” renders the paper or tape springy. The gummed strip is clearly not elastic in the ordinary acceptation of the term. It will be further noticed that the arrangement of the rods is not described in the claims, nor is the location of the moistening device given. The essence of the invention, therefore, resides in the stationary guide and springy strip which together displace the yielding member of the prior art. It will be seen that the difference between the structure described in the claims of the issue and the structure of the prior art is very slight. In the prior art, the yielding member or spring kept the tape away from the moistener when the device was not in use. In the present invention, the location of certain rods, acting upon the adhesive material as it is drawn along, bends it so that, when released, it springs away from and out of contact with the dampener.
We will now turn to the original Chase application, the drawings of which have undergone no change whatever. Chase originally described his device as consisting of a reel containing a roll of gummed paper and a moistener feeding downward to a moistening pad, beneath which the ribbon is led. A plurality of rods, running between which the ribbon passes to the moistening pad, are shown in his drawing, but the function of the rods is not stated in the specification as originally filed. After a rejection of claim 1 of his original application on the *183 patent to Mackay, Chase, on January 18th, 1905, long prior to Frost’s filing date, and also long prior to his alleged date of conception, filed an amendment containing the following statement: “The rod 8 is so located with relation to the rod 2 .and roller that the gummed and stiffened strip is bent as it travels between the rod 2 and roller 8, and this bend serves to ■give the strip a tendency to drop upon the rod and further, the rod 3, when the strip is released after the same has been cut off, prevents the movement of the strip too far to the left, viewing figure 2, and the rod 2 at the other side of the strip prevents the approach of the strip towards the moistening device when the strip is cut off.” (Italics ours.) The following argument accompanied the amendment: “It is essential in the apparatus herein shown and described that the strip of paper be drawn between and across rolls, as the bending of the strip by the rod 3 between the rod 2 and roller 8 gives to the gummed strip a tendency to resume immediately a position in Contact with the rod 4,” which was away from and out of contact with the moistener. At the same time, the following claim was presented, which was allowed and became 1 of the Chase patent:
“1. In apparatus of the class described, a tank, a moistening device located below said tank, a plurality of rods between and over which to draw a strip on its way to be acted upon by the moistening device, means for cutting off the moistened strip, And a device to sustain the end of the strip below and out of •contact with the moistening device.”
We agree with the Examiners-in-Ohief and the Commissioner that the amended specification and claim were intended to •cover an arrangement of the rods by which, with the aid of the “gummed and stiffened strip,” that strip is removed from contact with the moistener when the device is not in use. There was no attempt on the part of Chase to introduce a new element into his original disclosure. He merely described an apparent function of that device. We rule, therefore, that his patent •discloses the invention in issue.
There being no concealment of the invention, the question as to whether Chase has been guilty of laches is not perti *184 nent to the issue here involved, nor is the question of intervening rights one that Frost may raise in this proceeding. Norling v. Hayes (just decided) ante, 169.
The appellee having suggested a diminution of the record, and prayed the issuance of a writ of certiorari to supply the same,, the writ was ordered to issue, upon condition, however,, that he deposit with the clerk of this court the estimated cost of printing the additional matter, that the appellant might be-reimbursed if, upon final hearing, it should appear that such; additional matter was immaterial to the issue.
The matter then brought up covers over forty pages of the printed record, and includes (1) affidavits not admissible in-evidence, and to the exclusion of which below no error was assigned; (2) the motion for rehearing before the Primary Examiner, the inclusion of which in the record being prohibited by rule 5 of this court; (3) notice to counsel for Frost concerning the operation of the so-called Chase model, not at all relevant here; (4) Frost’s petition, including argumentative-matter supporting it, to the Commissioner, to have him exercise-his supervisory authority and reverse the Board of Examiners-in-Chief in overruling Frost’s motion for the dissolution of: the interference, the same being unnecessary, as the record already contained the petition, minus the supporting argument; and (5) Chase’s motion to dismiss the last-named petition, also unnecessary, as the record already showed that such a motion was made.
The clerk will therefore, out of the deposit in his hands, reimburse appellant for printing the above unnecessary matter.
The decision of the Commissioner is affirmed, and the clerk-will certify this opinion as by law required. Affirmed,,